ERNST & YOUNG, LLP & David S. Meyer, Appellants,

v.

Sharon P. CLARK (In Her Official Capacity as Commissioner for the Kentucky Department of Insurance and Rehabilitator of AIK Comp); Stephen P. Lattanzio; Actuarial & Technical Solutions, Inc.; and John and Jane Does, all Unknown Actuaries and Accountants, Appellees.

and

Ernst & Young, LLP, Appellant,

v.

Appalachian Regional Healthcare, Inc.; Apollo Oil, LLP; Art's Electric, Inc.; Crittenden Health Systems; European Design, Inc.; Fischer Special Manufacturing Company; Gallatin Health Care, LLC; Hopewell Farm, LLC; Louden & Company, LLC; M & M Cartage, Inc.; Modco Transport; and Pattie A. Clay Regional Medical Center, Appellees.

Nos. 2007–SC–000770–TG, 2007–SC–000936–TG.

Supreme Court of Kentucky.

Aug. 26, 2010.

William D. Kirkland, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Frankfort, KY, Brooks R. Burdette, Christopher H. Giampapa, Schulte, Roth & Zabel, LLP, New York, NY, John A. Chandler, King and Spalding, LLP, Atlanta, GA, David J. Tocco, Vorys, Sater, Seymour, and Pease, LLP, Cleveland, OH, Eric Wade Richardson, Victor Allen Walton, Jr., Vorys, Sater, Seymour, and Pease, LLP, Cincinnati, OH, Counsel for Appellants.

Perry Mack Bentley, John Melvin Camenisch, Jr., Stoll, Keenon & Ogden, PLLC, Lexington, KY, Justin Drew Clark, Walter L. Sales, Stoll, Keenon & Ogden, PLLC, Louisville, KY, Paul C. Harnice, Stoll, Keenon & Ogden, PLLC, Frankfort, KY, Counsel for Appellee, Sharon P. Clark, in her Official Capacity as Commissioner for the Kentucky Department of Insurance and Rehabilitator of AIK Comp.

Bernard F. Lovely, Jr., Bowles, Rice, McDavid, Graff & Love, LLP, Lexington, KY, Counsel for Stephen P. Lattanzio and Actuarial & Technical Solutions, Inc.

Robert W. Bishop, Bishop & Associates, PSC, Louisville, KY, Ronald Richard Parry, Robert R. Sparks, Parry, Deering, Futscher & Sparks, PSC, Covington, KY, J. Guthrie True, Johnson, True & Guarnieri, LLP, Frankfort, KY, Gregory Eugene Mitchell, Frost, Brown & Todd, LLC, Jan De Beer, Lexington, KY, Counsel for Appellees, Appalachian Regional Healthcare, Inc., et al.

Opinion of the Court by Justice
VENTERS.

This appeal arises out of the insolvency of AIK Comp, a workers' compensation self-insurance group, and the efforts of the Rehabilitator appointed pursuant to Kentucky's "Insurers Rehabilitation and Liquidation Law"[1] (IRLL) to assert tort claims on behalf of AIK Comp against Appellants, Ernst & Young LLP, and others. Similar claims against Appellants were also asserted by the individual members of AIK Comp[2] in a class action. The Franklin Circuit Court entered orders in each case denying Ernst & Young's motion to enforce contractual provisions calling for such claims be submitted to "binding arbitration." Appeals from those orders were consolidated and transferred to this Court. Two issues are presented: first, whether the arbitration agreements in Ernst & Young's contracts with AIK Comp may be enforced against the Rehabilitator; and second, whether the same arbitration agreements force the plaintiffs in the class action to arbitrate their claims against Ernst & Young.

We hold that the arbitration agreements are not enforceable over the Rehabilitator's objection and affirm that order of the Franklin Circuit Court. However, for reasons set forth in section III of this opinion, we conclude that the circumstances that require the Rehabilitator's claims to remain in the Franklin Circuit Court are not applicable to the class action claims, and thus those claims are subject to the arbitration requirements. Accordingly, we reverse that order of the Franklin Circuit Court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

AIK Comp (formerly known as Associated Industries of Kentucky Selective Self-

---

1. KRS 304.33–010 to 304.33–600.

2. There are numerous plaintiffs in the class action. These plaintiffs include: Appalachian Regional Healthcare, Inc.; Apollo Oil, LLP; Art's Electric, Inc.; Crittenden Health Systems; European Design, Inc.; Fischer Special Manufacturing Company; Gallatin Health Care, LLC; Hopewell Farm, LLC; Louden & Company, LLC; M & M Cartage, Inc.; Modco Transport; and Pattie A. Clay Regional Medical Center.

Insurance Fund) is a workers' compensation self-insured group organized under KRS 342.350,[3] to provide its member-employers with the workers' compensation insurance required by KRS 342.340. At all times relevant to this action, KRS 342.347(1)[4] mandated the Commissioner of the Kentucky Department of Insurance (now the Executive Director of the Kentucky Office of Insurance) to periodically examine the financial condition of workers' compensation self-insured groups. KRS 342.347(2) required each self-insurance workers' compensation group, including AIK Comp, to be annually audited by an independent certified public accountant and to file with the Commissioner a detailed statement of its financial condition as disclosed by the audits. The statute specified the particular information to be included in the annual statement of financial condition.[5] KRS 342.347(5) required the insurance Commissioner to "make such recommendations to the Governor and legislative committees as may be appropriate to strengthen the oversight of self-insureds so that payment of liabilities to workers under this chapter is assured."

In 1999 and each year thereafter through 2003, the Chief Executive Officer of AIK Comp, Maurice Turner, and a representative from Ernst & Young, David S. Meyer, executed a written agreement (the "engagement letters") whereby Ernst & Young LLP, a certified public accounting and auditing firm, agreed to provide accounting services for AIK Comp to satisfy the statutory auditing and reporting requirements. Each engagement letter called for Ernst & Young to audit AIK Comp's finances for the previous fiscal year. A mediation and arbitration clause was included in the first engagement letter, and was thereafter incorporated by reference in the subsequent engagement letters. For the audits completed for fiscal years 1998 to 2001, the arbitration clause stated as follows:

> [a]ny controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Company (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter. Judgment on any arbitration award may be entered in any court having proper jurisdiction.

The dispute resolution procedures set forth in the attachment included a choice of law provision requiring that any dispute regarding the validity of the arbitration clause would "be governed by the Federal Arbitration Act."

In July 2002, Ernst & Young and AIK Comp executed another engagement letter, which applied to the audits for fiscal years 2002 and 2003 and contained the following, slightly different arbitration provision:

> [a]ny controversy or claim arising out of or relating to services covered by this

---

3. In 2005, after the failure of AIK Comp and after the audits that are the subject of this litigation, the General Assembly enacted KRS 304.50–010 to 304.50–160 which recodified, and in some instances modified, the regulation of workers' compensation self-insured groups previously covered by KRS 342.350.

4. Note that KRS 304.50–075, effective March 1, 2005, specifically calls for review of each workers' compensation self-insured groups' financial condition every four years by the Executive Director of the Office of Insurance.

5. KRS 304.50–110 now provides substantially similar reporting requirements.

letter or hereafter provided by us for the Fund or at its request (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Fund or of Ernst & Young LLP, *or involving any person or entity for whose benefit the services in question are or were provided),* shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter. Judgment on any arbitration award may be entered in any court having jurisdiction. (emphasis added.)

The latter arbitration clause retained the choice of law provision requiring that any dispute "shall be governed by the Federal Arbitration Act." Later in 2003, Ernst & Young resigned as AIK Comp's auditor prior to completion of the contract as outlined in the final engagement letter.

All of the audits completed by Ernst & Young for statutory submission by AIK Comp to Kentucky's insurance regulators indicated that the group was financially sound. The audits showed that AIK Comp maintained a positive fund surplus with sufficient assets and reserves to cover the liabilities that may arise from future workers' compensation claims. However, in 2004, a financial examination by a different accounting firm revealed that AIK Comp was in a deficit position and was unable to pay its claims. AIK Comp was subsequently placed in rehabilitation by order of the Franklin Circuit Court pursuant to KRS Chapter 304, and accordingly, a Rehabilitator [6] was appointed. The discovery of AIK Comp's insolvency brought into question the accuracy of the Ernst & Young audit reports and the competence of those who prepared them.

Eventually, a Reorganization Plan for AIK Comp was agreed upon by the Rehabilitator and by the numerous parties that had intervened in the rehabilitation. The Reorganization Plan was approved by the Franklin Circuit Court in December 2005. To finance most of AIK Comp's $90,000,000 deficit and to assure payment of the claims of injured workers, the Rehabilitation Plan required that the employers that comprised the membership of AIK Comp be assessed a proportional share of the deficit. The Reorganization Plan also provided for the Rehabilitator to "aggressively pursue" claims against those "[s]he holds responsible for the current problems faced by AIK Comp." Thus, pursuant to the Reorganization Plan and her power under KRS 304.33–160, the Rehabilitator filed suit against Ernst & Young and other parties [7] in the Franklin Circuit Court alleging that Ernst & Young's audits had been negligently prepared, and had concealed AIK Comp's declining financial condition. In addition, the members of AIK Comp that paid assessments to cover the financial deficit brought a separate suit against Ernst & Young and others in the Franklin Circuit Court, claiming that the assessments were necessitated by the alleged misrepresentations, omissions, and false statements made in the audits. The members' suits were consolidated into a class action.

---

**6.** Martin Koetters was the first Rehabilitator. He was succeeded by R. Glenn Jennings, who was succeeded by Julie Mix McPeak. Clark then replaced McPeak. To avoid confusion, we will use feminine pronouns to refer to the Rehabilitator throughout the opinion since Sharon P. Clark currently holds the position.

**7.** The Rehabilitator filed suit against Ernst & Young employee David S. Meyer, Actuarial & Technical Solutions, Inc. which performed actuarial services for AIK Comp between 1998 and 2003, and its agent Stephen Lattanzio.

In response, Ernst & Young filed motions in both cases to stay the proceedings and to compel arbitration in accordance with the arbitration clauses contained in the engagement letters described above. The Franklin Circuit Court denied the motions. Ernst & Young appealed. The Rehabilitator moved to transfer the appeal of her case from the Court of Appeals to this Court. Ernst & Young subsequently moved to transfer the appeal involving the members of AIK Comp to this Court. We granted the motions to transfer and consolidated the appeals.

At the outset, we note that the arbitration agreements entered into between Ernst & Young and AIK Comp are facially valid. *See General Steel Corp. v. Collins,* 196 S.W.3d 18, 20 (Ky.App.2006) (holding that the validity of an arbitration agreement must be determined as a threshold matter) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The engagement letters clearly contain agreements to arbitrate, and there is every indication that the elements of valid contract formation were satisfied.

Because the agreements explicitly require that disputes be governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.,* we need not consider Kentucky's Uniform Arbitration Act, KRS 417.045 *et. seq.*[8] *Conseco Finance Servicing Corp. v. Wilder,* 47 S.W.3d 335, 341 (Ky.App.2001) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)) (stating that choice of law provisions in arbitration agreements are to be generally upheld).

## II. THE ARBITRATION AGREEMENT BETWEEN ERNST & YOUNG AND AIK COMP IS NOT ENFORCEABLE AGAINST THE REHABILITATOR

Ernst & Young first argues that the Franklin Circuit Court erroneously denied its motion to compel arbitration of the Rehabilitator's suit. The Franklin Circuit Court order held that arbitration could not be compelled against the Rehabilitator because: 1) the IRLL gives the Franklin Circuit Court broad discretion to retain full jurisdiction of the rehabilitation of AIK Comp, including any lawsuits filed by the Rehabilitator as part of the rehabilitation process; 2) the arbitration agreements do not cover all of the annual audits which the Rehabilitator alleges Ernst & Young performed negligently; 3) the Rehabilitator was not a signatory to any of the arbitration agreements; 4) the IRLL grants the Rehabilitator broad authority to exercise the state's "police powers," including the authority to revoke or rescind AIK Comp's valid arbitration agreements; and 5) the Federal Arbitration Act's preference for enforcing arbitration agreements is subordinated to the IRLL by the reverse-preemption doctrine of the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et. seq.*

Ernst & Young argues that the Franklin Circuit Court order failed to recognize the supremacy of the Federal Arbitration Act and its establishment of a national policy favoring the arbitration of disputes. We do not disagree. However, we conclude

---

**8.** Under the Kentucky's "Uniform Arbitration Act", KRS 417.045–417.240, the arbitration clauses at issue would be unenforceable since they do not specifically provide for the arbitration to occur in this state. *Ally Cat, LLC v. Chauvin,* 274 S.W.3d 451, 455 (Ky.2009) (holding that the plain language of KRS 417.200 only allows enforcement of arbitration agreements which specifically state that the arbitration is to be held in Kentucky). *Ally Cat* has no applicability to an arbitration agreement governed exclusively by the Federal Arbitration Act.

that the trial court correctly found that the IRLL's broad grant of exclusive jurisdiction to the Franklin Circuit Court in matters relating to the delinquency of insurance companies preempts and supersedes the Federal Arbitration Act and its policy favoring arbitration.

*A. Reverse Preemption of the Federal Arbitration Act Under The McCarran–Ferguson Act–The Forsyth Test*

 KRS 304.33–010(6), one of the initial provisions of the IRLL, states:

[i]f there is a delinquency proceeding under this subtitle, the provisions of this subtitle shall govern those proceedings, and all conflicting contractual provisions contained in any contract between the insurer which is subject to the delinquency proceeding and any third party shall be deemed subordinated to the provisions of this subtitle. However, notwithstanding the foregoing, in any delinquency proceeding commenced against an insurer after July 15, 1996, nothing in this subtitle shall be construed to subordinate or restrict the rights of parties to submit their disputes to arbitration pursuant to a contractual arbitration clause contained in a reinsurance agreement.

"Delinquency proceeding," as defined by KRS 304.33–030(5), includes "any proceeding commenced against an insurer for the purpose of ... rehabilitating ... such insurer." Consequently, any provisions of the agreements between Ernst & Young and AIK Comp that conflict with KRS 304.33 "shall be subordinated to the provisions of [KRS subtitle 304.33, the IRLL]" unless as Appellants argue, the Federal Arbitration Act preempts KRS 304.33–010(6). "Under the conventional applica-

tion of the supremacy clause and rules of statutory construction, the Federal Arbitration Act, a federal statute, would preempt Kentucky's Liquidation Act, a state statute,[9] insofar as the Liquidation Act contravenes the Federal Arbitration Act." *Stephens v. American Int'l Ins. Co.,* 66 F.3d 41, 43 (2d Cir.1995). However, the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.,* establishes a doctrine of "reverse preemption" that expressly exempts from federal preemption state statutes enacted to regulate insurance, leaving the regulation of insurance to the individual state. Under McCarran–Ferguson, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such [federal] Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b) (1994). The United States Supreme Court created a three-part test to determine when reverse preemption of federal law through McCarran–Ferguson occurs. The test is whether: 1) the state statute was enacted for the purpose of regulating the business of insurance; 2) the federal statute involved "does not specifically relat[e] to the business of insurance"; and 3) the application of the federal statute would "invalidate, impair, or supersede" the state statute regulating insurance. *Humana Inc. v. Forsyth,* 525 U.S. 299, 307, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999).

In this matter, the first step of the *Forsyth* test is clearly satisfied. There can be no reasonable doubt that the IRLL, of which KRS 304.33–010(6) is a part, was enacted to regulate the "business of insurance." *Stephens,* 66 F.3d at 41; *National Home Ins. Co. v. King,* 291 F.Supp.2d 518

---

**9.** The Court in *Stephens* adopted the term "the Kentucky Liquidation Act" as a shorthand reference for the Kentucky Insurers Rehabilitation and Liquidation Law, KRS 304.33–010 *et seq. Stephens,* 66 F.3d at 42.

(E.D.Ky.2003). We can hardly overstate the degree to which the regulation of insurance permeates this controversy. The very claims which Ernst & Young would take to arbitration arise directly out of Kentucky's intense interest in the regulation of worker's compensation insurance. The audits that form the core of the Rehabilitator's claims were performed by Ernst & Young for AIK Comp to comply with state insurance regulations which include a review of such audits by the state's insurance commissioner to monitor the solvency of AIK Comp. The IRLL is itself the ultimate measure of the state's regulation of the insurance business: the take-over of a failing insurance company.

The second step of the *Forsyth* test is satisfied because the Federal Arbitration Act does not "specifically relat[e] to the business of insurance." *See Munich Am. Reinsurance Co. v. Crawford,* 141 F.3d 585, 590 (5th Cir.1998); *Davister Corp. v. United Republic Life Ins. Co.,* 152 F.3d 1277, 1279 (10th Cir.1998).

The third step of the *Forsyth* test presents the question of whether the application of a federal law, in this case the Federal Arbitration Act, would "invalidate, impair, or supersede" provisions of a state statute regulating insurance, the IRLL. In essence, this returns us to KRS 304.33–010(6) because the question of whether the Federal Arbitration Act (with its strong preference for arbitration) "invalidates, impairs, or supersedes" a state law regulating insurance is, as a practical matter, virtually the same question we started with: whether the arbitration clauses of the engagement letters conflict with any provisions of the IRLL. If, as the Rehabilitator argues, arbitration is inconsistent

with parts of the IRLL, then KRS 304.33–010(6) commands that the arbitration clauses be overridden, and for that same reason, the final part of the *Forsyth* test would be satisfied.

**B. The Arbitration Clauses and the FAA Conflict with the IRLL's Grant of Broad Exclusive Jurisdiction to the Franklin Circuit Court**

Enforcement of the arbitration clauses found in the engagement letters between Ernst & Young and AIK Comp conflicts with the IRLL. We are directed by KRS 304.33–010(3) to liberally construe the provisions of the IRLL to effect the purposes stated in KRS 304.33–010(4). KRS 304.33–010(4)(c) expressly states that one of the purposes of the IRLL is the "enhanced efficiency and economy of liquidation, through the *consolidation of matters relating to the liquidation under the supervision of a single court* so as to avoid divergent rulings by a multiplicity of judicial tribunals ...." (emphasis added). KRS 304.33–040(3)(a) provides that "the [Franklin Circuit] court [10] shall have exclusive jurisdiction to entertain, hear, or determine all matters in any way relating to any delinquency proceeding under this subtitle, including, but not limited to, all disputes involving purported assets of the insurer." KRS 304.33–040(3)(b) allows the Franklin Circuit Court to "authorize a rehabilitator [11] to seek injunctive or other appropriate relief from other courts, either within this state or without this state, if in the opinion of the [Franklin Circuit] court, this action will be an aid to any delinquency proceeding."

Similarly, KRS 304.33–140(2) provides:

**10.** The actual word used in KRS 304.33–040 is "court." However, KRS 304.33–030 defines court as the "Franklin Circuit Court."

**11.** The statute uses the word "receiver" which at KRS 304.33–030(3) is defined to include a "receiver, liquidator, rehabilitator, or conservator, as the context requires."

(2) Upon the issuance of an order directing the executive director to rehabilitate a domestic insurer, the [Franklin Circuit] court shall have exclusive jurisdiction over all matters relating to the rehabilitation, including, but not limited to, the proper scope and application of the provisions of this subtitle to the rehabilitation as well as all interpretation and enforceability of all contracts of insurance to which the insurer is a party.

Exclusive jurisdiction over *"all matters in any way relating to* any delinquency proceeding ... including ... all disputes involving purported assets of the insurer"[12] and over *"all matters relating to* the rehabilitation"[13] is an extremely broad grant of authority by the General Assembly to the Franklin Circuit Court. Such broadly defined exclusive jurisdiction, coupled with directions for liberal construction, is a very rare, if not unique, provision in Kentucky law. We have on other occasions in another context noted the broad scope of this jurisdictional grant:

> The subtitle provides Franklin Circuit Court broad discretion as to supervision of the proceedings. KRS 304.33–040 pertains to the exclusiveness of proceedings and states that the court shall have exclusive jurisdiction over all matters relating to the proceeding, including all disputes over assets. The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the subtitle. Section (3)(c) states that no provisions in the subtitle shall be construed to preclude the court from, on its own motion, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process.

*Kentucky Central Life Ins. Co. v. Stephens,* 897 S.W.2d 583, 587 (Ky.1995); *see also Minor v. Stephens,* 898 S.W.2d 71, 80 (Ky.1995).

It is evident that an essential goal of the IRLL is to promote consistent rulings in all matters that impact the rehabilitation of an insurance company. We believe that the strong language of KRS 304.33–040(3)(a) and KRS 304.33–140(2) is an unambiguous expression of the General Assembly's intention to achieve that goal by concentrating in the Franklin Circuit Court "all matters in any way related" to the proceeding to rehabilitate or liquidate an insurance company. The vesting of such jurisdiction in the Franklin Circuit Court, including the broad authority to supervise all issues relating to a rehabilitation, provides a logical and reasonable means of attaining the IRLL's stated purpose of achieving "enhanced efficiency and economy of liquidation, through the consolidation of matters relating to the liquidation under the supervision of a single court so as to avoid divergent rulings by a multiplicity of judicial tribunals." KRS 304.33–010(4)(c)).

Compelling the enforcement of the arbitration agreements in this case would remove virtually all of the supervisory authority of the Franklin Circuit Court over the adjudication of the Rehabilitator's claims against Ernst & Young and place it in the hands of the arbitrators. Thus, all discovery issues, evidentiary disputes, and determinations of applicable law would be made by the arbitrators, not by the court as the General Assembly intended.

Inconsistent and incompatible results are possible if the Rehabilitator's claims against Ernst & Young are resolved by arbitration, while other issues pertaining

---

**12.** KRS 304.33–040(3)(a)

**13.** KRS 304.33–140(2)

to the AIK Comp rehabilitation are adjudicated in the Franklin Circuit Court. Piecemeal adjudication and the potential for inconsistent verdicts are what the General Assembly sought to avoid by the IRLL's strong grant of exclusive jurisdiction to the Franklin Circuit Court.

Ernst & Young argues that the potential for such inefficiencies is not relevant to the enforceability of valid arbitration agreements, and cites cases that discount such concerns in favor of arbitration.[14] We recognize the validity of the cited authority, but we note that they do not involve arbitration in the context of a proceeding to liquidate or rehabilitate an insurance company, with the extraordinary state interest vested therein; nor, do they involve the strong statutory preference for the resolution of such matters in a specific forum that we find in the IRLL.

Ernst & Young also argues KRS 304.33–010(6) does not apply in this case because the Rehabilitator's lawsuit is not a "delinquency proceeding." *See Nichols v. Vesta Fire Ins. Corp.*, 56 F.Supp.2d 778 (E.D.Ky. 1999) (holding that an insurance Rehabilitator's breach of contract suit filed against a third-party insurer was merely a "garden variety" lawsuit, not a delinquency proceeding in which KRS 304.33–010(6) would apply). On this point, we first note that KRS 304.33–010(6)'s subordination of contractual provisions that conflict with the IRLL is not limited to the "delinquency proceeding." By the plain language of KRS 304.33–010(6), any contractual provision in conflict with the IRLL is subordinated *"[i]f there is a delinquency proceeding under this subtitle ...."* (emphasis added). That there is, in fact, a delinquency proceeding in the Franklin Circuit Court regarding AIK Comp cannot be dis-

puted, and as part of that proceeding under KRS 304.33–160(4), the Rehabilitator has been charged to "pursue all appropriate legal remedies on behalf of the insurer."

Secondly, the federal court in *Nichols* found that the exclusive jurisdiction granted by KRS 304.33–040 to the Franklin Circuit Court was inapplicable because the claim involved was simply a "common law breach of contract action which merely happens to involve an insolvent insurer." *Nichols*, 56 F.Supp.2d at 780. "[T]he instant action is no more than a garden variety contract suit which happens to involve two insurers. The fact that one is insolvent is irrelevant[.]" *Id.* at 781. Far from being just a coincidental aspect of a "garden variety" claim, AIK Comp's insolvency was allegedly caused by Ernst & Young's audits which masked AIK Comp's true financial condition. Under the Reorganization Plan approved by the Franklin Circuit Court, the Rehabilitator's claims against Ernst & Young are an essential component of AIK Comp's rehabilitation. Unlike the claims in *Nichols*, the claims asserted by the Rehabilitator fall squarely within the scope of KRS 304.33–040(3)(a), as "matters ... relating to [a] delinquency proceeding under this subtitle, including ... all disputes involving purported assets of the insurer," and therefore, under KRS 304.33–010(6) remain within the exclusive jurisdiction of the Franklin Circuit Court.

We therefore conclude that the contractual provisions for arbitration under the Federal Arbitration Act are in conflict with the jurisdictional requirements of the IRLL. In reaching this conclusion, we reject Ernst & Young's comparison of that result to the anti-arbi-

**14.** *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hospital v.* *Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

tration concept of "ouster of jurisdiction," a doctrine discredited in *Fite & Warmath Construction Co. v. MYS Corp.*, 559 S.W.2d 729, 735 (Ky.1977), and *Kodak Min. Co. v. Carrs Fork Corp.*, 669 S.W.2d 917, 921 (Ky.1984). We recognize that when a lawsuit is submitted to arbitration, the trial court technically retains jurisdiction over the proceeding while the issues are arbitrated. But, we also recognize that in such situations, the trial court no longer retains the authority to "determine all matters in any way related to the delinquency." KRS 304.33–040(3)(a). When a dispute goes to arbitration, the trial court's broad discretion to decide all issues pertaining to pre-hearing procedures, including discovery, all issues of substantive law, and all evidentiary matters passes to the arbitrator. 4 Am. Jur.2d. *Alternative Dispute Resolution*, § 157–169 (2007). The trial court's function is constricted to the simple entry of a final judgment enforcing the arbitrator's decision. *See DiMercurio v. Sphere Drake, Ins., PLC*, 202 F.3d 71, 77 (1st Cir.2000) (holding that "arbitration agreements do not divest courts of jurisdiction, though they prevent courts from resolving the merits of arbitrable disputes.") Only if the arbitrator's decision is alleged to have been tainted by fraud or favoritism does the trial court have the ability to intercede. *See Wall Street Associates, L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir.1994)(citing the Federal Arbitration Act, 9 U.S.C. § 10); *3D Enterprises Contracting Corp. v. Lexington–Fayette Urban County Government*, 134 S.W.3d 558, 561 (Ky.2004) (citing KRS 417.160 of Kentucky's Uniform Arbitration Act). Such a substantial reduction of the court's role in a process central to the rehabilitation of an insurance company is inconsistent with our legislature's extensive grant of exclusive jurisdiction to the Franklin Circuit Court. The General Assembly did not intend for that grant of jurisdiction to be overruled by an insurance company's agreement to arbitrate issues critical to the state's interest in the rehabilitation or liquidation of the insurance company.

■ Therefore, we conclude that the third part of the *Forsyth* test is satisfied because the Federal Arbitration Act's preference for arbitration conflicts with, and impairs, the IRLL's grant of broad and exclusive jurisdiction to the Franklin Circuit Court. In this case, application of the McCarran–Ferguson Act reverse-preempts the Federal Arbitration Act. Pursuant to KRS 304.33–010(6), the federal policy favoring arbitration is subordinated to the state's superior interest in having matters relating to the rehabilitation of an insurance company adjudicated in the Franklin Circuit Court.

The Rehabilitator properly chose to initiate her claims against Ernst & Young in the Franklin Circuit Court, and properly declined to submit the matter to arbitration. We affirm the court's order denying Ernst & Young's motion to compel arbitration of the Rehabilitator's claims.

## III. THE CLASS ACTION PLAINTIFFS ARE BOUND BY THE ARBITRATION CLAUSES IN THE ENGAGEMENT LETTERS

■ Ernst & Young next argues that the Franklin Circuit Court erred by denying its motion to compel arbitration of the members' class action lawsuit. The Franklin Circuit Court denied the motion for the following reasons: 1) the court believed the plaintiffs' claims against Ernst & Young were not covered by the arbitration clauses because they do not "arise out of or relate to" the services Ernst & Young performed pursuant to the engagement letters; 2) the class action plaintiffs had not signed the engagement

letters containing the arbitration agreements, are not identified in the agreements as parties subject to the arbitration clauses, and are not otherwise bound under agency principles to the arbitration clauses; 3) the plaintiffs are not third-party beneficiaries to the engagement letters containing arbitration agreements; 4) the plaintiffs are not equitably estopped from disavowing the arbitration clauses; and 5) compelling arbitration of class action claims while the Rehabilitator's claims are litigated promotes the inefficiencies and confusion inherent in piecemeal adjudication.

We begin the analysis with the trial court's first reason and fifth reason as listed above because if either of those reasons validly supports its decision, our consideration of the remaining issues becomes unnecessary.

## A. The Plaintiffs' Claims Arise From the Services Ernst & Young Performed Pursuant to the Engagement Letters

The trial court justified its refusal to enforce the arbitration clauses in the engagement letters by holding that the clauses simply do not apply to the class action claims in question. We disagree. The arbitration clauses plainly state that they apply to "[a]ny controversy or claim arising out of or relating to services covered by this letter ...," the services being Ernst & Young's accounting and auditing for AIK Comp. Regardless of whether the class action claims are viewed as contract disputes or tort claims, or as something else, Ernst & Young's auditing and accounting services for AIK Comp are the basis for all of the claims. Thus, the plaintiffs' claims "arise out of" and "relate to" the services Ernst & Young were obligated by the engagement letters to render.

## B. Inefficient Piecemeal Adjudication of Complex Litigation Does Not Authorize Avoidance of Agreements to Arbitrate

The trial court concluded that despite any basis upon which the class action plaintiffs might otherwise be bound by the arbitration clauses, arbitration of their claims should not be compelled because resolving the class action claims in a forum separate and apart from the adjudication of the Rehabilitator's claims unduly complicates an already complex matter, infusing it with the inefficiency of duplicative effort and the potential for inconsistent or incompatible results. Having previously noted that the claims of the Rehabilitator and the claims of the class action plaintiffs are based upon the same allegations of deficient auditing by Ernst & Young, we do not doubt that separate adjudicative processes will substantially increase the burden in time and expense to witnesses and litigants.

However, as we also stated previously in this opinion, the Rehabilitator's claims involve the rehabilitation of an insurance company which is a matter of such compelling state interest that, under federal law, it transcends the applicability of the Federal Arbitration Act. Although the class action plaintiffs' claims and the Rehabilitator's claims arise from the same course of conduct, the class action claims are essentially private disputes with no substantial impact on the state's regulation of insurance. Joining the claims of the class action plaintiffs with the Rehabilitator's claims may promote judicial economy, but we do not see that it would promote the legislative policy embodied in KRS 304.33–010(4) for consolidating the various claims of the Rehabilitator. Without an overarching state interest to the contrary, the class action plaintiffs cannot avoid the forceful preference for arbitration found in the Federal Arbitration Act. The United

States Supreme Court has decided the question in favor of the Federal Arbitration Act's national policy promoting arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding the Federal Arbitration Act requires arbitration of pendent arbitrable claims even where the result would be the inefficient maintenance of separate proceedings in different forums); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that under the Federal Arbitration Act, an arbitration agreement must be enforced even though it results in piecemeal litigation by other persons who are parties to the underlying dispute but not to the arbitration agreement.) We perceive that the federal policy allows no accommodation for the situation present here. Thus we conclude that the trial court erred by finding that arbitration could be denied on the grounds of judicial economy.

## C. The Class Action Plaintiffs Gave Assent to the Arbitration Clause via their Application for AIK Comp Membership

None of the class action plaintiffs actually signed the engagement letters. However, Ernst & Young argues that each of the class action plaintiffs is nevertheless bound to the arbitration agreements because upon joining AIK Comp, each executed a membership application giving assent to be bound by AIK Comp's contracts. The argument, although presented by Ernst & Young to the trial court, is not mentioned in the order denying the motion to arbitrate. However, we agree that the assent given in the membership application binds the class action plaintiffs to the arbitration clauses.

In the membership application, each class action plaintiff upon joining AIK Comp agreed to "appoint AIK Comp and its trustees to act as [its] agent[s] in all matters relating to Kentucky Workers' Compensation Statutes" and "to abide by the rules, regulations and by-laws of [AIK Comp] and *to conform to the terms of the agreements they may enter into with any authorized service company* " for as long as membership in AIK Comp was maintained. (emphasis added.) Ernst & Young reasons that since AIK Comp's annual audits are matters "relating to Kentucky Workers' Compensation Statutes," Maurice Turner [15] acted as an agent of each member when he executed the engagement letters.

■ First, we do not agree with Ernst & Young's argument that AIK Comp acted as the agent of its members when it executed the engagement letters. Under basic agency principles, an agent acts on the principal's behalf and is subject to the principal's control. *See Restatement (Third) Of Agency § 1.01* (2006). The audit requirement of KRS 342.347(2) [16] pertains only to AIK Comp. AIK procured the audits for itself, not as an agent on behalf of the individual members. As employers, the members are bound by Kentucky's workers' compensation laws, but they have no duty to obtain an audit and therefore have no need of an agent in obtaining one. In signing the engagement letters, Turner was not acting as an agent of the class action plaintiffs. We construe that language of the membership application as simply enabling AIK Comp to act as agent for the individual members in the processing and settlement of worker compensation claims, just as traditional workers' com-

---

**15.** Chief Executive Officer of AIK Comp.

**16.** Now KRS 304.50–110.

pensation insurers act as agents of the parties they insure to resolve workers' compensation issues.

Ernst & Young's second argument, that the member application compels each member of AIK Comp "to conform to the terms of the agreements [AIK Comp] may enter into with any authorized service company," is well taken. We are presented with no sound rationale by which we may conclude otherwise. The plaintiffs do not contend that Ernst & Young is not an "authorized service company." By accepting membership in AIK Comp, the class action plaintiffs agreed to "conform" to AIK Comp's agreements. We find no basis upon which to distinguish the arbitration clauses of the engagement letters from any other agreement with a service company, and thus conclude each class action plaintiff, under the terms of the membership application, agreed to "conform" to AIK Comp's agreements with Ernst & Young, including the agreement that claims or controversies arising from Ernst & Young's services be submitted to arbitration.

Accordingly, we reverse the trial court's order denying Ernst & Young's motion to compel arbitration of the class action claims. Because of that resolution, we need not address Ernst & Young's argument that the class action plaintiffs are third-party beneficiaries under the agreements and are otherwise equitably estopped from disavowing the agreements.

### D. The Other Entities Listed in the Arbitration Clauses are not Bound Thereby

The class action plaintiffs argue that the 2002 modification to the engagement letter, which purports to add "any person or entity for whose benefit the services in question are or were provided" to the list of parties required to arbitrate, is a clear indication that they were excluded from the arbitration clauses in the 1998–2001 engagement letters. We are not persuaded however, because we do not read the agreements as establishing a list of collateral parties to be bound thereby. The list of other entities in the arbitration clauses does not purport to identify the parties that must submit to arbitration. Literally read, it simply includes as among the kinds of disputes that AIK Comp must arbitrate, controversies that "involve" the listed entities. The listing of such entities is of no significance in the resolution of the issues presented herein, and the 2002 modification provides no relief to the class action plaintiffs.

### IV. CONCLUSION

For the reasons set forth above, we affirm the Franklin Circuit Court's order in Civil Action No. 05–CI–00344 denying the Appellants' demand for arbitration of the claims brought against it by the AIK Comp Rehabilitator, and we reverse the Franklin Circuit Court's order in Civil Action No. 05–CI–00455 denying the Appellants' motion to compel arbitration of the claims of Appalachian Regional Healthcare, Inc. and the other class action plaintiffs. Accordingly, we remand this matter to the Franklin Circuit Court for entry of an order compelling arbitration of the class action lawsuit and for further proceedings in the adjudication of the Rehabilitator's claims.

All sitting. All concur.