RENDERED: DECEMBER 16, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0288-DG

LEGACY CONSULTING GROUP, LLC; AND
MONEY CONCEPTS CAPITAL
CORPORATION

APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.                                          NO. 2018-CA-1580
FAYETTE CIRCUIT COURT NO. 18-CI-00444

BRENDA GUTZMAN, IN HER CAPACITY AS
THE EXECUTRIX OF THE ESTATE OF
GRACE W. MCGAUGHEY, DECEASED;
AND JACKSON NATIONAL LIFE
INSURANCE COMPANY

APPELLEES

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

Under federal and state law, arbitration agreements validly entered into are generally enforceable. However, arbitration agreements contained within insurance contracts are not enforceable. The primary issue we decide in this case is whether Grace McGaughey and, by extension, her estate are bound by the arbitration provisions contained within the agreement which she signed with Money Concepts Capital Corporation and Legacy Consulting Group, LLC in December 2009 when she purchased a variable annuity with Jackson

National Life Insurance Company.[1]  We hold that under the facts of this proceeding, neither Ms. McGaughey nor her estate is bound.  We therefore affirm the Court of Appeals.

## I.      Facts and Procedural Background.

In 2009, Ms. McGaughey, then age 89, was the trustee of the William A. McGaughey Non-Marital Trust dated April 12, 1992 ("Trust").  From documents in the record, the Trust owned, or was the beneficiary of, a Hartford Life annuity with respect to Paul McGaughey who died prior to December 2009.  The payout from that annuity was to be approximately $400,000 to $425,000.  Upon the advice of David W. Hudson,[2] an investment advisor/registered representative of Money Concepts, Ms. McGaughey decided to invest $401,000 in a variable annuity with Jackson, specifically Jackson Perspective L Series Fixed & Variable Annuity.  The 2009 contract between Ms. McGaughey and Money Concepts, consisting of eleven pages, contained an arbitration agreement.  The Jackson paperwork gave reasons for replacement as "Annuitant is deceased, to realize gains in tax year 2009, and step up the death benefit."

---

[1] As will be explained, this case is an interlocutory appeal from the Fayette Circuit Court which denied Money Concepts' and Legacy Consulting's joint motion to enforce arbitration terms in their agreement with Ms. McGaughey.  We will sometimes refer to these two parties jointly as "Appellants."  Jackson, while a named party to this proceeding, did not have arbitration terms in its contract and therefore has not participated herein.

[2] According to the Kentucky Secretary of State's business records, David W. Hudson formed Legacy Creek, LLC in April 2009.  In 2010, its name was changed to Legacy Consulting Group, LLC.

The Contract Data Page for the Jackson Annuity indicated that the Owner was the Trust. The Annuitant was to be Ms. McGaughey, age 89. The stated Initial Premium was $401,988.36; the Issue Date was December 29, 2009; and the Income Date was December 29, 2015. The Annuity's terms provided that the Premium could be withdrawn at anytime prior to the Income Date, subject to a possible withdrawal charge. Similarly, in the event of the death of the Annuitant prior to the Income Date, since the Owner was the Trust and not a natural person, the Annuity appears to provide for payout to designated beneficiaries, in this case, the Trust. Because Ms. McGaughey lived beyond the Income Date, the Income Provisions set forth in the Annuity, pages 23-26, became operable, and Ms. McGaughey was provided with at least five options: 1) lump-sum distribution; 2) Life Income annuity; 3) Joint and Survivor annuity; 4) Life annuity with 120 or 240 Monthly Periods Guaranteed; or 5) Income for a Specified Period. In addition, Jackson provided that other income options were available, and that the available annuities could be either Fixed Annuity Payments or Variable Annuity Payments. Annuity, page 24. The record is clear that Ms. McGaughey did not select a payout option until the month prior to the Income Date and that Ms. McGaughey chose, or was advised to choose, the Life Income Annuity with a Fixed Annuitization. Over the ensuing fifteen or so months, Ms. McGaughey apparently received monthly payments of $9,695.90, payable quarterly, or a total of approximately $145,000.

3

Following Ms. McGaughey's death in March 2017, her daughter, Brenda Gutzman, was appointed Executrix under her will. Gutzman apparently questioned the propriety of the Life Income Annuity with Jackson and was advised that the annuity payments terminated following her mother's death. Gutzman then sued Money Concepts, Legacy Consultants and Jackson in the Fayette Circuit Court alleging several common law and statutory claims. Based on the arbitration agreement, Money Concepts and Legacy Consulting moved to compel arbitration. The trial court initially held the motion in abeyance, pending limited discovery as to the signed documents, and ultimately denied the motion to compel. Money Concepts and Legacy Consulting then filed an interlocutory appeal with the Court of Appeals. That court affirmed the trial court, opining that "the product at issue is for insurance based on the description of the portfolio as a fixed account and the regular payments of the same amount . . . consistent with an insurance product." *Legacy Consulting Grp., LLC v. Gutzman*, 2018-CA-001580-MR, 2020 WL 2781708, at *9 (Ky. App. May 29, 2020). Consequently, that court held that the arbitration agreement was unenforceable. KRS[3] 417.050(2). Money Concepts and Legacy Consulting filed a petition for discretionary review, which we granted.

---

[3] Kentucky Revised Statute.

4

## II. Analysis.

The analytical framework for this dispute is relatively simple. If the investment product which Ms. McGaughey selected, with the advice of Legacy Consulting and Money Concepts, was "insurance," which under KRS 304-1.030 includes a fixed payment annuity, then the arbitration agreement is unenforceable. KRS 417.050(2); *see also Ernest & Young, LLP v. Clark*, 323 S.W.3d 682, 688 (Ky. 2010) (stating that McCarran-Ferguson Act, 15 U.S.C. § 1012(b), "establishes a doctrine of 'reverse preemption' that expressly exempts from federal preemption state statutes enacted to regulate insurance, leaving the regulation of insurance to the individual state[]"). Conversely, if the investment product was a security, including a variable rate annuity, then the arbitration agreement applies. As might be expected, the parties diverge as to their respective views on the investment product. Appellants focus on the original 2009 Jackson Annuity and its Accumulation Phase in which Ms. McGaughey bore the risk of the investment. Gutzman, by contrast, focuses on the post-Income Date during which Ms. McGaughey received a fixed rate annuity.

Appellants argue that the determination of whether a contract constitutes "insurance" within the meaning of the McCarran-Ferguson Act is determined by federal law. *SEC v. Variable Annuity Life Ins. Co.*, 359 U.S. 65, 69 (1959) (stating "the meaning of 'insurance' or 'annuity' under these Federal Acts [the McCarran-Ferguson Act and the Security Act of 1933, 15 U.S.C. §§ 77a-77aa] is a federal question[]"). In *Variable Annuity*, the Court discussed

5

the differences between the variable annuities at issue in that case and traditional fixed annuities.  As to the latter, the Court noted that "traditionally and customarily they . . . offer[] the annuitant specified and definite amounts beginning with a certain year of his or her life.  The standards for investment of funds underlying these annuities have been conservative." *Id.*  Conversely, variable annuities were invested to a greater degree in common stocks, and the benefit payments vary with the success of the investment policy.  *Id.*  The Court concluded that "the concept of 'insurance' involves some investment risk-taking on the part of the company." *Id.* at 71.

Justice William J. Brennan, Jr., wrote a concurring opinion in which he fleshed out in more detail the provisions of the variable annuity at issue.  Like Ms. McGaughey, the annuitant had the option to cash out.  *Id.* at 86 (Brennan, J., concurring).  Importantly for our decision, the variable aspect of the annuity payout continued following the pay-in period.  Justice Brennan noted:

> Before the maturity date, when the schedule of payments in the contract ceases and the payments out commence, the investor can draw down his 'units' in cash, and dispense with all 'annuity' features.  Failing this, he is entitled to elect one of several annuity alternatives.  These are in the sample policy, a straight life annuity on the life of the investor, a straight life annuity with 10 years' payments certain, and a joint and survivor annuity on the life of the investor and another.  Again, while the duration of the company's obligation to pay is independent of its investment experience, the amount of each payment is not a direct money obligation but a function of the status of the company's portfolio.

*Id.* at 86.  In this case, Ms. McGaughey elected a fixed payout that was not dependent on Jackson's portfolio.

6

Appellants argue that a focus on the post-December 2015 aspect of the annuity ignores the plain language of the contract as established in December 2009. Again, we turn to the Supreme Court for guidance.

Eight years after *Variable Annuity*, the Court had an occasion to address another variable annuity product. *SEC v. United Benefit Life Ins. Co.*, 387 U.S. 202 (1967). In *United*, the annuity premiums were invested in a "'Flexible Fund' with the object of producing capital gains as well as an interest return, and the major part of the fund is invested in common stocks." *Id.* at 205. The Court noted,

> After maturity the policyholder has no further interest in the "Flexible Fund." He has either received the value of his interest in cash, or converted to a fixed-payment annuity in which case his interest has been transferred from the "Flexible Fund" to the general reserves of the company, and mingled, on equal terms per dollar of cash value, with the interests of holders of conventional deferred annuities.

*Id.* The SEC's position was that the portion of the contract involving the "Flexible Fund" in the pre-maturity phase was "separable and a 'security,' within the meaning of the Securities Act." *Id.* The Court noted the parties' agreement that "the provisions dealing with the operation of the fixed-payment annuity were purely conventional insurance provisions, and thus beyond the purview of the SEC." *Id.* The lower courts ruled against the SEC on the basis that the contract was to be considered as a whole and not fragmented as argued by the SEC. *Id.* They held that under the contract as a whole, the company bore investment risk which "gave the entire contract the character of insurance." *Id.*

7

The Supreme Court disagreed, stating "[f]irst, we do not agree with the Court of Appeals that the 'Flexible Fund' contract must be characterized in its entirety. Two entirely distinct promises are included in the contract and their operation is separated at a fixed point in time." *Id.* at 207. Thus, and contrary to Appellants' argument, we, in fact, look at the distinct promises included in the contract and their operation at fixed points in time. *See also Nat'l Home Ins. Co. v. King*, 291 F. Supp. 2d 518, 527 (E.D. Ky. 2003) (noting well-established principle that "whether a particular contract is one of insurance does not depend on what it is called, but what it does[]") (citations omitted).

This conclusion is buttressed by the Ninth Circuit Court of Appeals decision in *Patenaude v. Equitable Life Assurance Society*, 290 F.3d 1020 (9th Cir. 2002), *abrogated on other grounds by Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 636 n.1 (2006), in which the court addressed whether state law claims involving variable annuities were preempted by the Securities Litigation Uniform Standards Act. Pub. L. No. 105-353, 112 Stat. 3227 (codified in scattered sections of 15 U.S.C.). The court noted that variable annuities are "hybrid" products, "retain[ing] some aspects of both a security and an insurance product. To understand the interplay, we must deconstruct the product." 290 F.3d at 1027. The Court then stated,

> As hybrid products, variable annuities are properly subjects of hybrid regulation. **There is nothing inappropriate or inconsistent about the securities component being subject to federal securities regulation and the insurance aspects being subject to state regulation.** For that reason, nothing in SLUSA displaces state insurance regulation, nor "invalidate[s], impair[s],

8

or supersede[s] any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b).

290 F.3d at 1027 (emphasis added).

The annuity in this case was initially set up as a variable rate annuity. Under case law, that initial investment was not insurance, but rather a security. The issue, however, in this case is whether, following the Income Date, when Ms. McGaughey elected a fixed income annuity, did the annuity become insurance? The question seems to answer itself. If Ms. McGaughey had elected in December 2009 to invest in the variable annuity and, at that same time, elected a fixed rate payout, then perhaps Appellants would stand on firmer ground.[4] The facts are, however, that the payout was left open and Jackson provided Ms. McGaughey with multiple options. From the limited record before us, Legacy Consulting may have been involved in some form or fashion in advising Ms. McGaughey as to her options.[5] In other words, Ms. McGaughey was making a new investment, which could have continued as a security or become insurance. In this case, her investment in December 2015

---

[4] Appellants cite a number of opinions to support their argument that a variable rate annuity is a security and not insurance: *Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166 (D.C. Cir. 2010) (holding that variable annuities were covered securities under the Securities Litigation Uniform Standards Act); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2nd Cir. 2001); *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*, 698 F.2d 320 (7th Cir. 1983); *Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245 (S.D. Ga. 2005); *Malone v. Addison Ins. Mktg., Inc.*, 225 F. Supp. 2d 743 (W.D. Ky. 2002); *Dean & Homer, Inc. v. Commonwealth, Pub. Prot. Cabinet*, 451 S.W.3d 659 (Ky. App. 2014). None of these opinions, however, compel the result Appellants seek as none deal with the issue presented in this case.

[5] The record contains Ms. McGaughey's December 2015 election as to the Fixed Annuity. This document appears to have Legacy Consulting as its source. Appellants' Brief, App'x 4.

9

was insurance. As a result, KRS 417.050(2) provides that the arbitration provision is unenforceable.

## III. Conclusion.

We affirm, therefore, the Court of Appeals opinion affirming the Fayette Circuit Court's Order denying Money Concepts Capital Corporation and Legacy Consulting Group, LLC's motion to compel arbitration. This matter is remanded to the Fayette Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Eric Gribbon
Akerman LLP

Andrew Robinson Smith
Steptoe & Johnson PLLC

COUNSEL FOR APPELLEE,
BRENDA GUTZMAN:

Thomas Kelly Herren
Herren & Adams LLP

COUNSEL FOR APPELLEE,
JACKSON NATIONAL LIFE INSURANCE
COMPANY:

Jacinta F. Porter
Frost, Brown & Todd LLC