LAMBERT, JUDGE:
This appeal is from an order of the Franklin Circuit Court holding that the Appellants' (collectively, The Lantern's) arbitration agreement is invalid and denying their motion to dismiss or stay the Appellees' (the Thomas family's) claims. We affirm.
John Thomas, Sr., 82 years old and in declining mental health, became a resident at The Lantern on January 25, 2017, and remained there until February 11 of that same year. During his brief stay, Thomas suffered several falls, the last of which resulted in severe injuries and required hospitalization. He did not return to the facility.
On April 14, 2017, his family (his son, John Thomas, Jr., as power of attorney, and his wife, DeAnn Thomas) filed a complaint in Franklin Circuit Court seeking compensation for damages resulting from alleged negligence, medical negligence, corporate negligence, and gross negligence. The complaint also sought redress for loss of consortium as well as punitive damages and recoupment of attorney fees and costs.[1]
*487 The Lantern asserted that the parties were bound by an arbitration agreement contained within the numerous documents John Thomas, Jr., signed upon his father's admission to the personal care home. The Lantern requested that the matter be dismissed or, in the alternative, stayed until the arbitration process could be completed. The parties briefed the issues, and the circuit court held hearings on the matter. On December 1, 2017, the circuit court entered its order finding that the arbitration agreement was invalid and denying The Lantern's motion to stay or dismiss. The Lantern appeals.
Our standard of review is set forth in Padgett v. Steinbrecher , 355 S.W.3d 457, 459 (Ky. App. 2011) :
In reviewing an order denying enforcement of an arbitration clause or agreement, we apply a two-fold standard of review. See [Kentucky Revised Statute] KRS 417.220(2) ("The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action."). First, we examine the trial court's findings of fact. Conseco Fin. Servicing Corp. v. Wilder , 47 S.W.3d 335, 340 (Ky. App. 2001). Those factual findings are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence. Id. Second, we review the circuit court's legal conclusions de novo to determine if the law was properly applied to the facts. Id.
See also Kindred Nursing Centers Ltd. Partnership v. Cox , 486 S.W.3d 892, 894 (Ky. App. 2015). Additionally, "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." Ping v. Beverly Enterprises, Inc. , 376 S.W.3d 581, 590 (Ky. 2012) (citation omitted).
The Lantern first argues that the circuit court erred in its interpretation of the agreement's choice-of-law provision. The arbitration agreement specifically stated: "This Arbitration Agreement shall be governed by and interpreted in accordance with the laws of the State of Tennessee, including the Tennessee Uniform Arbitration Act." The Lantern avers that both Frankfort Medical Investors, LLC, and Frankfort Senior Community Limited Partnership are "foreign business entities formed under the laws of Tennessee with principal offices in Tennessee," which would provide the proper nexus to the laws of that state. Furthermore, The Lantern argues, the choice-of-law provision did not render the agreement unenforceable but rather it could have been enforced under applicable Kentucky law. Therefore, The Lantern continues, the circuit court incorrectly determined that the agreement was invalid because of its choice-of-law provision.
The Thomas family counters that The Lantern is making this argument for the first time on appeal. Additionally, the Thomas family states that this was an integral rather than ancillary term of the agreement, and the circuit court correctly held that the choice-of-law provision was one of multiple flaws which rendered the agreement unenforceable.
We disagree with The Lantern. The Tennessee Uniform Arbitration Act provides:
An initial application shall be made to the court of the county in which the agreement provides the arbitration hearing shall be held or, if the hearing *488 has been held, in the county in which it was held. Otherwise the application shall be made in the county where the adverse party resides or has a place of business or, if the adverse party has no residence or place of business in this state, to the court of any county. All subsequent applications shall be made to the court hearing the initial application unless the court otherwise directs.
Tennessee Code Annotated (T.C.A.) § 29-5-318 (West).
Yet, KRS 417.200 requires that the arbitration take place in Kentucky. "When the issue arises prior to the arbitration hearing, as it has in this case, and the agreement upon which arbitration is sought fails to comply with the literal provisions of KRS 417.200, the courts of Kentucky are, pursuant to KRS 417.200, without jurisdiction to enforce the agreement to arbitrate." Ally Cat, LLC v. Chauvin , 274 S.W.3d 451, 455-56 (Ky. 2009). See also Padgett , 355 S.W.3d at 462 ("Accordingly, unless an arbitration clause or agreement explicitly states the arbitration is to be conducted in Kentucky, Kentucky courts lack jurisdiction to compel arbitration.").
The Lantern refers to this as an ancillary logistical concern, not a fatal flaw in the agreement. The circuit court held otherwise: "The definition of 'court' is limited to that of a court of Tennessee, which, of course, this Court is not." We find no error in this aspect of the circuit court's analysis, even were it insufficiently informed about The Lantern's status as a foreign corporation, as The Lantern maintains here.
The Lantern secondly argues that the circuit court erred in ruling that the omission of all necessary parties in the document rendered it unenforceable. The Lantern concedes that it made a drafting error which left blank the name of John Thomas, Sr., but that the agreement's references to "the Resident" and "the Resident's authorized representative" left no doubt as to the parties involved. Again, The Lantern sees this as an ancillary rather than integral matter.
The circuit court correctly ruled that it cannot supply a contract's absent terms. It cited Commonwealth v. Morseman , 379 S.W.3d 144 (Ky. 2012), regarding the elements of an enforceable contract, namely: "The requirements generally associated with contracts are 'offer and acceptance, full and complete terms, and consideration.' " Id. at 149 (citations omitted). "For the terms to be considered complete they must be 'definite and certain' and must set forth the 'promises of performance to be rendered by each party.' Kovacs v. Freeman , 957 S.W.2d 251, 254 (Ky. 1997)." Energy Home, Div. of Southern Energy Homes, Inc. v. Peay , 406 S.W.3d 828, 834 (Ky. 2013).
As the drafter of the document, it was incumbent on The Lantern to provide the necessary terms. See Perry v. Perry , 143 S.W.3d 632, 633 (Ky. App. 2004). " 'The Court cannot read words into the contract which it does not contain.' " Id. (citation omitted). Failure to name John Thomas, Sr., was yet another flaw in a series of same committed by The Lantern in the drafting and execution of the arbitration agreement.
We are lastly asked by The Lantern to ignore the fact that the agreement's named (and exclusive) arbitrator, the National Arbitration Forum (NAF) was, by a 2009 consent decree, barred from conducting arbitration proceedings. The circuit court found that The Lantern failed to disclose this "material fact" to the Thomas family and that, therefore, there could be no essential meeting of the minds. We not only agree with this conclusion, but *489 also note that The Lantern was aware of the consent decree for eight years prior to John Thomas, Sr.'s admission to its facility yet failed to make the necessary adjustments to its documents in the interim.
We quote directly from the circuit court's order:
[T]his agreement is one that was drafted by [The Lantern], who were fully capable of reviewing their own documents and procedure. Instead, [The Lantern], sophisticated parties, attempted to have Mr. John Thomas, Jr., an unsophisticated and unrepresented lay person, sign on to a poorly drafted forty-two-page Residency Agreement that contained within it a two-page Arbitration Agreement missing the identity of the party to which it was intent on binding, containing impossible-to-perform terms, and purporting to be bound by Tennessee law.... This Court finds that no valid contract existed, and, therefore, [The Lantern's] Motion to Dismiss or Stay must be denied.
Accordingly, we affirm the Franklin Circuit Court order denying The Lantern's motion to dismiss or stay the proceedings.
ALL CONCUR.

These latter claims are not argued by either party in this appeal and are thus not mentioned in this discussion. However, we note from the circuit court record that the parties and the circuit court recognized the severability of DeAnn Thomas's claims. Kentucky Revised Statute 411.145(2) ; Ping v. Beverly Enterprises, Inc. , 376 S.W.3d 581, 600 (Ky. 2012). Because a court speaks only through its written orders entered upon the official records (see Midland Guardian Acceptance Corp. of Cincinnati, Ohio v. Britt , 439 S.W.2d 313 (Ky. 1968) ; and Com. v. Wilson , 280 Ky. 61, 132 S.W.2d 522 (1939) ), we cannot consider that issue here. Kindred Nursing Centers Ltd. Partnership v. Sloan , 329 S.W.3d 347, 349 (Ky. App. 2010).