RENDERED:  MARCH 20, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0514-MR

FIDELITY BROKERAGE SERVICES
LLC                                                              APPELLANT

APPEAL FROM PIKE CIRCUIT COURT
v.        HONORABLE HOWARD KEITH HALL, JUDGE
ACTION NO. 17-CI-01194

ESTATE OF NANCY BOLTON                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND ECKERLE, JUDGES.

CALDWELL, JUDGE:  Appellant Fidelity Brokerage Services LLC ("Fidelity")

appeals the order of the trial court vacating its prior order to compel arbitration and

finding it lacked subject matter jurisdiction to enforce the agreement.

# BACKGROUND

This appeal arises from disputes regarding a brokerage account that

Nancy Bolton ("Bolton") first opened with Fidelity in 2009. To open the account,

Bolton signed and submitted a preprinted form account application ("Application")

that Fidelity had supplied. The Application contained the following language near

the space where Bolton signed:

> This account is governed by a predispute arbitration
> clause which is located on the last page of the Customer
> Agreement. I acknowledge receipt of the predispute
> arbitration clause.

Record on Appeal ("R.") at 18.

On the previous page of the Application, in a section titled

"Signature," the following language appears:

> I acknowledge that I have been furnished with a copy of
> the Fidelity Account Customer Agreement and that I
> have read, understood, and agree to be bound by its terms
> and conditions as they are currently in effect and as they
> may be amended in the future.

R. at 17 (underlined emphasis in original).

Just below, the same section also contains the statement:

> **I understand that the Customer Agreement and its
> enforcement shall be governed by the laws of the
> Commonwealth of Massachusetts** . . . [and] this
> Agreement shall be binding upon my heirs, executors,
> administrators, successors, and assigns.

*Id*. (boldface emphasis in original).

In 2014, Bolton passed away. Sometime during 2013, she took steps to add her son, James Hamilton ("Hamilton"), whom she had previously listed as beneficiary, as a tenant in common on the account. Whether Bolton completed the necessary steps to do so before she passed away is a matter that appears in dispute by the parties.

The Pike District Court appointed Hamilton as Executor of Bolton's Estate in 2014. In October of 2017, the Estate filed suit against Fidelity in Pike Circuit Court. There, the Estate alleged it had sustained damages after Fidelity had wrongfully denied it access to the account. In July of 2018, without answering the complaint, Fidelity filed a Motion to Dismiss or in the Alternative to Stay and Compel Arbitration, along with a memorandum in support of its motion.

Along with its motion and memorandum, Fidelity submitted exhibits which included the Application, a nine-page document titled Fidelity Account Customer Agreement ("Customer Agreement") to the trial court. On the initial page, the following language appears:

> **Disputes between you and Fidelity are settled by arbitration.**
>
> As with most brokerage accounts, the parties agree to waive their rights to sue in court, and agree to abide by the findings of an arbitration panel established in accordance with an industry self-regulatory organization.

R. at 27 (boldface emphasis in original).

On the seventh page of the Customer Agreement, there is the following language:

> **Governing Laws and Policies**
>
> **This agreement and its enforcement are governed by the laws of the Commonwealth of Massachusetts, except with respect to its conflicts-of-law provisions.**

R. at 33 (boldface emphasis in original).

The ninth and final page of the Customer Agreement contains the following language:

> **Resolving Disputes—Arbitration**
>
> This agreement contains a pre-dispute arbitration clause. Under this clause, which you agree to when you sign your account application, you and Fidelity agree as follows:
>
> . . .
>
> The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
>
> . . .
>
> **All controversies that may arise between you and us concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance,**

-4-

**interpretation or breach of this or any other agreement between you and us, whether entered into or arising before, on or after the date this account is opened) shall be determined by arbitration in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as you may designate. . . . The designation of the rules of a self-regulatory organization or securities exchange is not integral to the underlying agreement to arbitrate.**

R. at 35 (boldface emphasis in original).

Fidelity's motion requested the trial court dismiss the Estate's claims "[p]ursuant to Rules 12.02(a), 12.02(c), and 12.02(f) of the Kentucky Rules of Civil Procedure" or, in the alternative, to stay the litigation and compel arbitration in accordance with the Federal Arbitration Act ("FAA") 9 U.S.C.[1] §§ 1 *et seq.* In Fidelity's supporting memorandum, it primarily argued the arbitration provision at issue was valid and enforceable under the FAA and that Kentucky courts were obligated to enforce such an agreement.

The Estate filed a response in opposition to Fidelity's motion, contending that the validity of the arbitration agreement was in dispute and that Fidelity had not met its burden in establishing its validity. The Estate questioned

---

[1] United States Code.

whether the signature on the Application was in fact that of Bolton and whether Fidelity placed the signature upon the Application.

Thereafter, Fidelity submitted a reply memorandum in support of its motion. On November 12, 2018, the Estate filed a responsive memorandum and argued that the trial court lacked jurisdiction to compel arbitration because the arbitration agreement did not state where arbitration was to occur and thus did not satisfy the requirements of KRS[2] 417.200. The Estate argued that any award from arbitration could prove unenforceable as a result of the lack of jurisdiction. In the alternative, the Estate argued that genuine issues of material fact existed as to whether any agreement had been made.

For reasons that are not clear from the record, the trial court did not rule upon the motion. In late 2019, a CR[3] 77.02(2) notice issued requiring the parties to show cause why the case should not be dismissed for lack of prosecution. Fidelity submitted a memorandum requesting the trial court dismiss the matter and also renewed its motion to compel arbitration. The Estate argued otherwise; the matter remained on the active docket. Another CR 77.02(2) notice issued in March of 2021. The parties again submitted pleadings which referenced the pending motion to compel arbitration. The parties argued before the trial court at a hearing

---

[2] Kentucky Revised Statutes.

[3] Kentucky Rules of Civil Procedure.

-6-

in July of 2021. Thereafter, the trial court ordered that the parties could supplement the file within ten days and rebut any supplemental filing within the following five days; otherwise, a ruling would be made in twenty days. Both parties filed supplemental memorandums. However, no order of the trial court ruling on the motion to compel arbitration followed. In August of 2022, a third CR 77.02(2) notice issued. Fidelity again renewed its motion to compel arbitration. A show cause hearing on the notice occurred in September of 2022.

The trial court granted Fidelity's motion in an order that was entered on June 26, 2023. There, the trial court ordered the parties' dispute be determined "under the terms and conditions of the parties' Arbitration Agreement" and placed the case in abeyance pending the outcome of arbitration. R. at 190.

Thereafter, the Estate made a motion to alter, amend, or vacate the order placing the case in abeyance. The parties argued before the trial court at a hearing on August 11, 2023.

In March of 2024, two conflicting orders issued regarding the Estate's motion on the same date. One order ("the Order"), R. at 230, indicated the trial court had granted the motion. In this Order, the trial court found that the Estate had presented a question as to the existence of a contract that was for a jury to answer. However, the Order also concluded that, "even if a jury [were] to determine a valid arbitration agreement exist[s] as urged by [Fidelity], it would be

unenforceable as Kentucky Courts do not have subject matter jurisdiction under *Ky. Rev. Stat. Ann. 417.200* to enforce same." Order, p. 2. The other order from March 2024 denied the motion to alter, amend, or vacate.

On April 16, 2024, the trial court ruled that the order which had denied the Estate's motion to alter, amend, or vacate was set aside, as it had been inadvertently signed and entered. The trial court further ruled the Order which granted the Estate's motion to alter, amend, or vacate would stand. Accordingly, the trial court effectively denied the motion to compel arbitration. This appeal follows.

**ANALYSIS**

Fidelity argues that the trial court erred by refusing to enforce the arbitration agreement. Fidelity maintains the agreement was valid and enforceable and that the Estate failed to meet its burden of establishing otherwise. Fidelity contends that the trial court abdicated its responsibility to construe the validity of the agreement when it accepted an erroneous argument by the Estate that a question as to the existence of a contract was a matter for jury determination. Furthermore, Fidelity argues, the trial court erroneously determined that, pursuant to *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451 (Ky. 2009), it lacked jurisdiction to compel arbitration under the terms of the tendered agreement.

## STANDARD OF REVIEW

Fidelity appeals the trial court's Order of March 27, 2024, which concluded Fidelity's tendered arbitration agreement was unenforceable. In discussing the standard of review of an order denying a motion to compel arbitration, this Court has stated:

> Ordinarily, such orders [which do not completely resolve the parties' rights in an action or contain a CR 54.02 recitation] are interlocutory and are not immediately appealable. However, an order denying a motion to compel arbitration is immediately appealable.

*Golden Gate Nat'l Senior Care, LLC v. Rucker*, 588 S.W.3d 868, 870 (Ky. App. 2019) (quoting *Genesis Healthcare, LLC v. Stevens*, 544 S.W.3d 645, 648–49 (Ky. App. 2017)). *See also* CR 54.01.

When reviewing an order that has denied a motion to compel arbitration, we review the trial court's legal conclusions *de novo* "to determine if the law was properly applied to the facts." *Padgett v. Steinbrecher*, 355 S.W.3d 457, 459 (Ky. App. 2011). However, factual findings of the trial court "are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence." *Id.*

Disputes concerning arbitration agreements may implicate either, or both, the Kentucky Uniform Arbitration Act ("KUAA"), KRS 417.045 *et seq.*, and the FAA. *Jackson v. Legacy Health Servs., Inc.*, 640 S.W.3d 728, 732 (Ky. 2022).

The KUAA and the FAA govern the enforcement and effect of an arbitration agreement. *Masonic Homes of Kentucky, Inc. v. Est. of Leist By & Through Leist*, 699 S.W.3d 868, 871 (Ky. App. 2024). "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Id.* (quoting *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 588 (Ky. 2012)).

Under either the KUAA or the FAA, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Ping*, 376 S.W.3d at 590 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)).

"[T]he existence of a binding agreement to arbitrate is necessarily a threshold consideration for a trial court faced with a motion to compel arbitration." *Jackson*, 640 S.W.3d at 732. State law rules of contract formation will determine whether the movant has met its burden to establish the existence of a valid agreement. *Ping*, 376 S.W.3d at 590; *see also Jackson*, 640 S.W.3d at 732 ("Disposition of" the determination of whether a binding agreement to arbitrate exists "implicates state law contract principles.").

After the movant meets the burden and presents *prima facie* evidence of a valid arbitration agreement, "the heavy burden of avoiding the agreement

-10-

shifts to the other party." *Green v. Frazier*, 655 S.W.3d 340, 345 (Ky. 2022) (citing *Louisville Peterbilt*, 132 S.W.3d at 857).

### The Scope Of Review Is Limited To The Trial Court's Dispositive Determination

In its Appellant brief, Fidelity contends that the Estate has already received the relief it seeks in its initiating complaint. We decline to address any substantive issues as to the underlying claim. The scope of interlocutory appellate review should be limited to the issue presented in the interlocutory appeal itself and should not extend to substantive issues. *Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018) (citing *Commonwealth v. Samaritan Alliance*, 439 S.W.3d 757, 760 (Ky. App. 2014)). "Otherwise, interlocutory appeals would be used as vehicles for bypassing the structured appellate process." *Baker*, 543 S.W.3d at 578.

Furthermore, we limit our review to the dispositive issue of whether the trial court properly determined it lacked subject matter jurisdiction to compel arbitration. The parties devote some arguments to commentary in the Order regarding jury determination as to the existence of a contract. We decline to address this as the finding is not critical to the result reached by the Order. In fact, the Order determines a jury's determination, were any questions as to contract formation here subject to such review, would make no difference to the question of the agreement's *enforceability*.

Nonetheless, we are compelled to point out here that this case has now been pending in our Court system for more than eight years. The Estate's arguments as to disputed facts concerning arbitrability remain undeveloped. It is difficult to discern specific factual allegations in dispute that the Estate asserts would be determinative of contract formation and/or arbitrability. On two occasions the case came before the trial court following notices issued pursuant to CR 77.02(2). On both occasions, the Estate filed a response. In the second, the Estate included an argument that it had not had any opportunity to conduct discovery.

Where an answer is provided following a CR 77.02(2) notice, a trial court has a wide degree of discretion in deciding whether a party has shown good cause to allow the action to remain on the court's docket. *Wildcat Prop. Mgmt., LLC v. Reuss*, 302 S.W.3d 89, 93 (Ky. App. 2009). We discern no abuse of the trial court's wide discretion in allowing the action to remain active, particularly given there was a pending motion before the trial court which ultimately turned upon interpretation of law unrelated to any factual dispute alleged by the Estate. Furthermore, Fidelity does not pursue appellate relief on this issue and alleges no abuse of discretion by the trial court in allowing the matter to remain active.

Nonetheless, our review of the record revealed no noteworthy effort by the Estate to engage in discovery on the issue of the disputed facts it alleges.

The Estate was not without recourse. A trial court may appropriately order limited discovery on the issue of arbitrability while a motion to compel arbitration is pending. *Stanton Health Facilities, LP v. Fletcher*, 454 S.W.3d 312, 315 (Ky. App. 2015). However, nowhere does the record indicate that the Estate ever pursued such an order.

While, pursuant to the trial court's initial briefing schedule, Fidelity's motion to compel arbitration was deemed submitted relatively early in the case history, the Estate continued to argue that multiple factual matters relevant to formation were in dispute and remained undetermined. Nonetheless, when a party such as Fidelity moves to compel arbitration, the circuit court must "decide under ordinary contract law whether the asserted arbitration agreement actually exist[ed] between the parties and, if so, whether it appli[ed] to the claim raised in the complaint." *Fletcher*, 454 S.W.3d at 315 (citing *N. Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010)). Going forward, we encourage the trial court to utilize the wide latitude Kentucky courts possess in the management of its docket for a more expeditious resolution of a motion to compel arbitration. *See Love v. Walker*, 423 S.W.3d 751, 758 (Ky. 2014). The setting *and enforcement* of deadlines for submission by the parties in any future disputed motion to compel arbitration, including an order of limited discovery where the trial court determines it is appropriate, would likely avoid excessive delays in the determination of

whether the parties entered into a binding agreement to arbitrate. *See Fletcher*, 454

S.W.3d at 315.

### The Trial Court Correctly Concluded That It Lacked Subject Matter Jurisdiction to Enforce the Arbitration Agreement

The Order concludes that the trial court is without jurisdiction to

enforce the arbitration agreement because of the agreement's failure to provide that

arbitration would occur in Kentucky:

> Kentucky Courts only have subject matter
> jurisdiction to enforce an agreement to arbitrate if the
> agreement provides for arbitration in this state
> (Kentucky). Further, the agreement must unequivocally
> provide for arbitration in Kentucky. *Padgett v.
> Steinbrecher*, 355 S.W.3d 457, 458 (Ky. App. 2011). An
> agreement to arbitrate that fails to include the required
> provision for arbitration within this state (Kentucky) is
> unenforceable, absent that provision. *Id*. and *Ally Cat,
> LLC v. Chauvin*, 274 S.W.3d 451, 452 (Ky. 2009).

> Here, Fidelity presents a Customer Agreement and
> the Customer Application, but neither document specifies
> that arbitration shall occur in Kentucky, which is required
> by *Padgett* and *Ally Cat*. Therefore, even if a jury were
> to determine a valid arbitration agreement exist[ed] as
> urged by Defendant, it would be unenforceable as
> Kentucky Courts do not have subject matter jurisdiction
> under *Ky. Rev. Stat. Ann. 417.200* to enforce same.

Order, p. 1–2.

Fidelity argues the trial court's determination here that it lacked

jurisdiction to compel arbitration was in error, asserting that "*Ally Cat . . .* does not

apply when, as here, a party seeks to compel arbitration under the FAA." This

-14-

argument conflates a party *seeking* to compel arbitration under the FAA with a court's determination that an arbitration agreement is *governed* by the FAA.

KRS 417.060 provides that where a party opposing an application to arbitrate "denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised." However, Fidelity at no time made any formal application under KRS 417.060 to compel arbitration. Fidelity's motion requested the trial court dismiss the Estate's claims "[p]ursuant to Rules 12.02(a), 12.02(c), and 12.02(f) of the Kentucky Rules of Civil Procedure[.]" Fidelity's motion *did* request, in the alternative, that the trial court stay the litigation and compel arbitration in accordance. However, in that motion as well as thereafter, Fidelity appears to have consistently and intentionally confined the procedural authority under which it sought a stay to § 3 and § 4 of the FAA (9 U.S.C. §§ 3, 4).

We have recognized that 9 U.S.C. § 3 is enforceable in Kentucky state courts. *PSC Indus., Inc. v. Toyota Boshoku Am., Inc.*, 649 S.W.3d 288, 292 (Ky. App. 2022) (citing *Kodak Min. Co. v. Carrs Fork Corp.*, 669 S.W.2d 917, 919 (Ky. 1984); *North Fork Collieries, LLC*, 322 S.W.3d at 102 n.2). *Where the FAA is applicable*, the federal statute requires that a trial court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been

-15-

had[.]" 9 U.S.C. § 3. However, Fidelity tendered a document which indicated "[t]his agreement and its enforcement are governed by the laws of the Commonwealth of Massachusetts[.]"

In *Ally Cat*, the Kentucky Supreme Court held that, pursuant to KRS 417.200, the Commonwealth's courts lack jurisdiction to enforce arbitration agreements which fail to designate Kentucky as the site for arbitration. 274 S.W.3d at 455–56. Subsequently, however, in *Ernst & Young, LLP v. Clark*, our Supreme Court examined arbitration agreements which "*explicitly* require[d] that disputes be governed by the [FAA]." 323 S.W.3d 682, 687 (Ky. 2010) (emphasis added). In a footnote, the Court clarified its prior holding, stating that, "*Ally Cat* has no applicability to an arbitration agreement governed *exclusively* by the Federal Arbitration Act." *Id*. at 687 n.8 (emphasis added).

Shortly after our Supreme Court's rendering of *Ernst & Young*, in an unpublished opinion, this Court considered a trial court's order denying arbitration pursuant to *Ally Cat* and which also failed to specifically address the applicability of the FAA.[4] There, the trial court mentioned a Massachusetts choice-of-law provision in the brokerage agreement.[5] At that time, we determined that remand to

---

[4] *Fid. Brokerage Servs. v. Folk*, No. 2009-CA-001725-MR, 2010 WL 4295827, at *2 (Ky. App. Oct. 29, 2010) (unpublished).

[5] *Id*.

the trial court for consideration of FAA was appropriate.[6]  Although the choice-of-law provision in the arbitration agreement and the trial court's conclusions of law were similar to those in the present matter, that unpublished case does not provide binding precedent.  RAP[7] 41(A).  Furthermore, in the interim following that opinion, significant developments in our jurisprudence have occurred.

Following its rendering of *Ernst & Young*, our Supreme Court has consistently held that Kentucky courts "need not consider Kentucky's Uniform Arbitration Act when the agreement[] explicitly require[s] that disputes be governed by the Federal Arbitration Act."  *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (citing *Ernst & Young*, 323 S.W.3d at 687) (internal quotation marks omitted); *see also JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 907 (Ky. 2014).  *M & H Trucking*, 392 S.W.3d at 906 (quoting *Hathaway v. Eckerle*, 336 S.W.3d 83, 87 (Ky. 2011) (holding that where an agreement "includes a 'choice of law' provision selecting the Federal Arbitration Act as the law governing any dispute between the parties . . . the Federal Arbitration Act governs the arbitration clause")) (internal quotation marks omitted).

---

[6] *Id.*

[7] Kentucky Rules of Appellate Procedure.

However, where the applicability of the FAA is disputed, a different analysis applies. In *Frankfort Medical Investors, LLC v. Thomas By & Through Thomas*, this Court reviewed the denial of a motion to compel arbitration where the agreement contained a choice-of-law provision specifying it would be "governed by and interpreted in accordance with the laws of the State of Tennessee, including the Tennessee Uniform Arbitration Act." 577 S.W.3d 484, 487 (Ky. App. 2019) (internal quotation marks omitted).

Fidelity's brief argues that the matter "clearly evidences a transaction in interstate commerce and is thus subject to the FAA." Our Supreme Court has found the FAA applies "to actions brought in the courts of this state where the purpose of the action is to enforce voluntary arbitration agreements in contracts evidencing transactions in interstate commerce." *Fite & Warmath Constr. Co. v. MYS Corp.*, 559 S.W.2d 729, 734 (Ky. 1977). Fidelity's motions sought arbitration pursuant to the FAA and made no assertion that the KUAA was applicable.

However, to the trial court as well as to this Court, Fidelity has provided no explanation or argument as to the appropriate consideration of the choice-of-law provisions within the documents it has tendered.

The facts here are similar to *Frankfort Med. Invs.*, in that there is a choice-of-law provision specifying the laws of another state. 577 S.W.3d at 487.

-18-

Here, the Customer Agreement which contains the arbitration agreement specifies "[t]his agreement and its enforcement are governed by the laws of the Commonwealth of Massachusetts, except with respect to its conflicts-of-law provisions." There is a distinction to be noted from *Frankfort Med. Invs.*; in that case, the agreement not only stated that Tennessee law applied but further specified that the Tennessee Uniform Arbitration Act would be applicable. 577 S.W.3d at 487. In this case, there is a Massachusetts choice-of-law provision but no specific statement which explicitly identifies the Massachusetts Arbitration Act ("MAA") as applicable. On the other hand, there is no mention of the FAA applying to the agreement. And neither the Application nor Customer Agreement contains language suggesting the parties intended to exclude arbitration issues from the general Massachusetts choice-of-law provision.

There are other provisions to consider. One within the Customer Agreement states that arbitration would occur: "in accordance with the rules then prevailing of the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as you may designate." However, the agreement also states that this "designation of the rules of a self-regulatory organization or securities exchange is not integral to the underlying agreement to arbitrate."

Our Supreme Court has stated that "choice of law provisions are generally valid in arbitration clauses[.]" *Hathaway*, 336 S.W.3d at 87. However, the sole question before this Court is whether arbitration should have been compelled by the trial court. We examine the choice-of-law provisions in the Application and Customer Agreement only because they are inconsistent with Fidelity's argument that the FAA governs that question. Certainly, the arbitration agreement here cannot be said to "*explicitly* require that disputes be governed by the [FAA]." *Ernst & Young*, 323 S.W.3d at 687 (emphasis added). Moreover, the Customer Agreement containing the arbitration agreement specifies that "[t]his agreement *and its enforcement* are governed by the laws of the Commonwealth of Massachusetts[.]" R. at 33 (emphasis added). Accordingly, we cannot conclude that the documents tendered by Fidelity reflect an agreement by the parties that enforcement of the arbitration agreement would be governed *exclusively* by the FAA. *See Ernst & Young*, 323 S.W.3d at 687 n.8 ("*Ally Cat* has no applicability to an arbitration agreement governed *exclusively* by the Federal Arbitration Act.") (emphasis added).

> The Supreme Court of the United States has stated that:
>
> [I]n cases falling *within a court's jurisdiction*, the [FAA] makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce." And this is so whether an agreement has a broad reach or goes just to one dispute, and whether enforcement be sought in state court or federal.

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S. Ct. 1396, 1402,

170 L. Ed. 2d 254 (2008) (emphasis added) (citations omitted).

Nonetheless, as the Supreme Court also recognized, parties "may

contemplate enforcement under state statutory or common law[.]"  *Hall St. Assocs.*,

552 U.S. at 590, 128 S. Ct. at 1406.  And while the United States Supreme Court

has "held that the FAA pre-empts state laws which require a judicial forum for the

resolution of claims which the contracting parties agreed to resolve by

arbitration[,]" it has also determined that "it does not follow that the FAA prevents

the enforcement of agreements to arbitrate under different rules than those set forth

in the Act itself."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior*

*Univ.*, 489 U.S. 468, 478–79, 109 S. Ct. 1248, 1255–56, 103 L. Ed. 2d 488 (1989)

(internal quotation marks omitted).

> Arbitration under the [FAA] is a matter of consent, not
> coercion, and parties are generally free to structure their
> arbitration agreements as they see fit.  Just as they may
> limit by contract the issues which they will arbitrate, . . .
> so too may they specify by contract the rules under which
> that arbitration will be conducted.

*Id.* at 479, 109 S. Ct. at 1256 (citation omitted).

The Court further determined in *Volt* that:

> Where . . . the parties have agreed to abide by state rules
> of arbitration, enforcing those rules according to the
> terms of the agreement is fully consistent with the goals
> of the FAA, even if the result is that arbitration is stayed

-21-

> where the Act would otherwise permit it to go forward.
> By permitting the courts to "rigorously enforce" such
> agreements according to their terms, . . . we give effect to
> the contractual rights and expectations of the parties,
> without doing violence to the policies behind by the
> FAA.

489 U.S. at 479, 109 S. Ct. at 1256 (citation omitted).

The Order here makes the determination that the arbitration agreement tendered by Fidelity was unenforceable because neither the Customer Agreement nor the Application specified that arbitration would occur in Kentucky. Relying on *Padgett* and *Ally Cat*, the trial court determined that, as a Kentucky court, it lacked subject matter jurisdiction to enforce any arbitration agreement, pursuant to KRS 417.200.

The Order does not explicitly conclude that the FAA is inapplicable as to governing enforcement because of the parties' contractual agreement that the laws of Massachusetts would instead apply. However, we may affirm a trial court for any reason supported by the record. *Univ. Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 799 (Ky. 2011); *see also Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 576 (Ky. 2009) ("[A]n appellate court may affirm a lower court's decision on other grounds as long as the lower court reached the correct result.").

Fidelity argues that the Estate did not meet its heavy burden to establish that the arbitration agreement was not enforceable, citing *M & H Trucking*, 392 S.W.3d at 906. The *M & H Trucking* decision resulted from a

-22-

choice-of-law provision that specifically designated the FAA as the governing law,

unlike here. *Id.* (citing *Hathaway*, 336 S.W.3d at 87). Here, Fidelity did not

tender an arbitration agreement "governed *exclusively* by the Federal Arbitration

Act." *Ernst & Young*, 323 S.W.3d at 687 n.8 (emphasis added). Instead, by their

express terms, the documents tendered by Fidelity reflected an unequivocal

agreement between the parties that matters related to enforcement would be

*governed by the laws of Massachusetts without stating "except for the*

*Massachusetts Arbitration Act (MAA)."* (The only exception stated to the

applicability of Massachusetts law was for conflict-of-law provisions.)

> The MAA provides that:
>
> An initial application shall be made to the superior court
> for the county in which the agreement provides the
> arbitration hearing shall be held or, if the hearing has
> been held, in the county in which it was held. Otherwise
> the application shall be made in the county where the
> adverse party resides or has a place of business or, if he
> has no residence or place of business in this state, to the
> superior court for any county. All subsequent
> applications shall be made to the court hearing the initial
> application unless the court otherwise directs.

Mass. Gen. Laws Ann. ch. 251, § 17 (West).

This language tracks closely to that of Tennessee Code Annotated

(T.C.A.) § 29-5-318 as it stood when *Frankfort Med. Invs.* was rendered.[8]  577

---

[8] At the time of this writing, the Venue statute for the Tennessee Arbitration Act is found at
T.C.A. § 29-5-328 (West).

S.W.3d at 487–88. Furthermore, as used in the Venue statute of the MAA, the definition of "court" is limited to a court in Massachusetts. *See* Mass. Gen. Laws Ann. ch. 251, § 16 (West) ("The term 'court' means any court of competent jurisdiction of this state."); *see also Frankfort Med. Invs.*, 577 S.W.3d at 488 ("The circuit court held [that]: '[t]he definition of "court" is limited to that of a court of Tennessee, which, of course, this Court is not.'").

As with *Frankfort Med. Invs.*, the overlapping statutory language likewise rendered the trial court here without subject matter jurisdiction to compel arbitration, as the agreement reflects an election by the parties to proceed under the MAA rather than under the FAA as regards matters of enforceability. 577 S.W.3d at 488.

This agreement here fails to specify that arbitration would occur in Kentucky and does not state that arbitration is governed by the FAA. Instead, it indicates that matters related to enforcement would be governed by Massachusetts law. Assuming the MAA applies, it would dictate that any arbitration take place in that state.

> Yet, KRS 417.200 requires that the arbitration take place in Kentucky. "When the issue arises prior to the arbitration hearing, as it has in this case, and the agreement upon which arbitration is sought fails to comply with the literal provisions of KRS 417.200, the courts of Kentucky are, pursuant to KRS 417.200, without jurisdiction to enforce the agreement to arbitrate." *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451,

455–56 (Ky. 2009). *See also Padgett*, 355 S.W.3d at 462 ("Accordingly, unless an arbitration clause or agreement explicitly states the arbitration is to be conducted in Kentucky, Kentucky courts lack jurisdiction to compel arbitration.").

*Frankfort Med. Invs.*, 577 S.W.3d at 488.

Here, Fidelity tendered to the trial court an agreement with no explicit indication it would be governed by the FAA but, rather, containing a choice-of-law provision pointing to Massachusetts law for matters of enforcement. Because the agreement does not state that arbitration shall take place in Kentucky, the trial court correctly concluded that it lacked subject matter jurisdiction to compel arbitration under the KAA. *See Ally Cat*, 274 S.W.3d at 455–56. Moreover, because the agreement does not explicitly provide that the FAA applies and even indicates that another state's arbitration act applies instead, we cannot conclude that the trial court had subject matter jurisdiction under the FAA. *See Ernst & Young*, 323 S.W.3d at 687; *M & H Trucking*, 392 S.W.3d at 906. Under these facts, we conclude that the trial court's subject matter jurisdiction "is governed by the [KUAA] and . . . not the statutes and constitutional provisions delineating the general subject matter jurisdiction of the circuit court." *Artrip v. Samons Const., Inc.*, 54 S.W.3d 169, 171 (Ky. App. 2001) (citing *Tru Green Corporation v. Sampson*, 802 S.W.2d 951, 953 (Ky. App. 1991)).

Thus, we discern no reversible error in the trial court's denying the motion to compel arbitration for lack of subject matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Order of the Pike Circuit Court is affirmed.

CETRULO, JUDGE, CONCURS.

ECKERLE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

ECKERLE, JUDGE, DISSENTING:  Respectfully, I dissent from the majority's decision to affirm the Trial Court's Order granting the Estate's motion to alter, amend, or vacate and denying Fidelity's motion to compel arbitration.  The Trial Court, having concluded that it lacked subject-matter jurisdiction to enforce the arbitration agreement, should have remanded the motion, dismissed the lawsuit outright, and advised the parties that they should sue in Massachusetts, the choice-of-law-state.  And it should have made that determination many years ago.

As addressed by the majority opinion, the procedural history of the case is anything but clear.  In addition to allowing multiple, lengthy procedural delays and issuing conflicting orders, the Trial Court rendered the subject Order, which can only be described as incongruous at best.  First, the Trial Court seems to agree with the Estate that there are genuine issues of material fact for a jury to consider, specifically as to the existence of a valid arbitration agreement.

-26-

However, as the majority points out, it then concludes that, "even if a jury [were] to determine a valid arbitration agreement exist[s] as urged by [Fidelity], it would be unenforceable as Kentucky Courts do not have subject matter jurisdiction under [KRS] 417.200 to enforce same." Order, p. 2. These conclusions of law are in reverse order and inherently conflicting, as a Court without subject-matter jurisdiction cannot then proceed to litigate a controversy.

The very first obligation of a Trial Court, or this Court for that matter, is to determine whether jurisdiction exists such that a legitimate ruling can be made.

> "It is fundamental that a court must have jurisdiction before it has authority to decide a case. Jurisdiction is the ubiquitous procedural threshold through which all cases and controversies must pass prior to having their substance examined." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005). Each court or administrative body "must determine for itself whether it has jurisdiction." *Id.* at 914 (quoting *Hubbard v. Hubbard*, 303 Ky. 411, 197 S.W.2d 923 (1946)).

*Liquor World of Corbin, LLC v. Commonwealth Dep't of Alcoholic Beverage Control*, 458 S.W.3d 814, 816 (Ky. App. 2014). As explained by our Supreme Court:

> Subject matter jurisdiction is not for a court to "take," "assume," or "allow." "'[S]ubject-matter jurisdiction cannot be born of waiver, consent or estoppel,'" but it is absent "'only where the court has not been given any power to do anything at all in such a case . . . .'" *Duncan*

*v. O'Nan*, 451 S.W.2d 626, 631 (Ky. 1970) (quoting *In Re Estate of Rougeron*, 17 N.Y.2d 264, 271, 270 N.Y.S.2d 578, 217 N.E.2d 639, 643 (N.Y. 1966)). A court either has it or it doesn't, though admittedly there are times when more than one court may have subject matter jurisdiction or it is difficult to determine which court does.

*Nordike v. Nordike*, 231 S.W.3d 733, 737–38 (Ky. 2007). Our review of the Trial Court's determination that it possesses or lacks subject-matter jurisdiction is *de novo*. *Davis v. Davis*, 563 S.W.3d 105, 108 (Ky. App. 2018).

The Trial Court Order and majority opinion rely on *Ally Cat, LLC v. Chauvin*, in which our Supreme Court strictly construed KRS 417.200, holding that the KUAA confers subject-matter jurisdiction on a Kentucky Court "only if the agreement provides for arbitration in this state." 274 S.W.3d 451, 455 (Ky. 2009). If "the agreement upon which arbitration is sought fails to comply with the literal provisions of KRS 417.200, the courts of Kentucky are . . . without jurisdiction to enforce the agreement to arbitrate." *Id.* at 455–56; *see also Padgett v. Steinbrecher*, 355 S.W.3d 457, 462 (Ky. App. 2011) ("[U]nless an arbitration clause or agreement explicitly states the arbitration is to be conducted in Kentucky, Kentucky Courts lack jurisdiction to compel arbitration."). Moreover, the Supreme Court held that "the Court of [] Appeals in *Tru Green* and *Artrip* got it right." *Ally Cat*, 274 S.W.3d at 455 (citing *Tru Green Corp. v. Sampson*, 802 S.W.2d 951, 953

-28-

(Ky. App. 1991) and *Artrip v. Samons Constr., Inc.*, 54 S.W.3d 169, 172 (Ky. App. 2001)).  As we stated in *Tru Green*:

> The plain meaning of [KRS 417.200] is that the agreement, wherever made, must provide for the *arbitration itself* to be in the Commonwealth in order to confer subject matter jurisdiction on a Kentucky court; at that point, one looks to Kentucky Constitution § 112(5) and KRS 23A.010 to determine that the circuit court is the "court of competent jurisdiction of this state."

802 S.W.2d at 953 (quoting KRS 417.200) (emphasis in original).  Kentucky Constitution § 112(5), which is restated in KRS 23A.010(1), provides in pertinent part that:  The Circuit Court shall have "original jurisdiction of all justiciable causes not . . . vested *in some other court*."  (Emphasis added.)

Following *Ally Cat* and *Tru Green*, we must subject the arbitration agreement and related contractual terms between Fidelity and the Estate to the mandated, two-step analysis.  First, by "failing to designate a situs in Kentucky for the arbitration to take place, a step critical to conferring subject matter jurisdiction over the arbitration upon a Kentucky court[,]" the Trial Court is prevented from *enforcing* arbitration.  *Artrip*, 54 S.W.3d at 172 (citing *Tru Green*, 802 S.W.2d at 953).  Second, the choice-of-law-provision vests original jurisdiction over the subject matter of the controversy with Massachusetts Courts; thus, this provision also deprives the Trial Court of statutory and constitutional jurisdiction.  As the Trial Court is not a "court of competent jurisdiction," it also is prevented from

*compelling* arbitration, declining to order arbitration, or even taking any dispositive action other than dismissal. *Tru Green*, 802 S.W.2d at 953; KRS 417.200.

I do agree with the majority's findings that the Federal Arbitration Act is inapplicable, and that the agreement's choice-of-law-provision clearly makes the Massachusetts Arbitration Act ("MAA") the governing law. *See* 9 U.S.C. § 1 *et seq.*; Mass. Gen. Laws Ann. ch. 251 § 1 *et seq.* (West). But it follows that, if the MAA applies, only a Massachusetts Court has subject-matter jurisdiction over the dispute. *See* Mass. Gen. Laws Ann. ch. 251, § 16 (West) ("The term 'court' means any court of competent jurisdiction of this state."). While I concur with this part of the majority's reasoning, I disagree with the majority's conclusion to affirm, because that ruling results in upholding the Trial Court's unauthorized assuming of jurisdiction of this lawsuit despite that jurisdiction being vested in another state. We simply cannot lawfully affirm a decision on the merits reached without proper jurisdiction.

The majority compares the case *sub judice* to *Frankfort Medical Investors, LLC v. Thomas By & Through Thomas*, in which we upheld a Trial Court's denial of an elder-care facility's motion to dismiss a negligence suit. 577 S.W.3d 484 (Ky. App. 2019). In *Frankfort Med.*, we affirmed the Trial Court because the arbitration agreement in question was unenforceable as a result of multiple deficits. *Id.* at 489. Only one of the intrinsic problems in the *Frankfort*

*Med.* agreement was its recitation that it was governed by the laws of Tennessee, including the Tennessee Uniform Arbitration Act ("TUAA"). *Id.* at 487–88; *see* Tenn. Code Ann. § 29-5-302 *et seq.* (West). The TUAA provides: "An initial application shall be made to the court of the county in which the agreement provides the arbitration hearing shall be held or, if the hearing has been held, in the county in which it was held. Otherwise the application shall be made in the county where the adverse party resides or has a place of business or, if the adverse party has no residence or place of business in this state, to the court of any county. All subsequent applications shall be made to the court hearing the initial application unless the court otherwise directs." *Frankfort Med. Invs.*, 577 S.W.3d at 487–88 (quoting Tenn. Code Ann. § 29-5-318 (West)). Citing *Ally Cat*, we found no error in the Trial Court's analysis that the *Frankfort Med*. agreement's choice of Tennessee law limited the agreement's definition of "Court" to a Court in Tennessee. *Id.* at 488. But we affirmed the Trial Court's determination that "no valid contract existed." *Id.* at 489. There, the elder-care facility's poorly drafted agreement omitted the resident's name to bind it to the agreement, and the company failed to disclose essential information to an unsophisticated counterparty, which rendered the agreement unenforceable in any jurisdiction. *Id.* at 488–89. Therefore, we affirmed the Trial Court's order denying the elder-care facility's motion to dismiss or stay the proceedings, thereby allowing the Trial

Court to retain jurisdiction and reach the merits, which could have ultimately led to a finding of improper forum. *Id.* at 489. The specific language that the Trial Court used, and that we quoted and affirmed was "that no valid contract existed, and, therefore, [the facility's] Motion to Dismiss or Stay must be denied." *Id.* Importantly, *Frankfort Med.* cites *Ally Cat* and *Padgett*, but not *Artrip* or *Tru Green*. That omission is likely due to the irrelevance of the choice-of-law provision there, as the entire agreement was unenforceable. Furthermore, the TUAA is different from KUAA and MAA in that its jurisdictional language could be interpreted to allow another state's jurisdiction. And the appellant in *Frankfort Med.* was registered as a foreign corporation in Kentucky. Accordingly, under the particular facts of that case, a Kentucky Court could exercise limited jurisdiction to find the agreement was "unenforceable." Thus, *Frankfort Med.* is highly distinguishable from the case at hand.

Still, *Frankfort Med.* notwithstanding, it is imperative to note that generally Trial Courts cannot avoid or sidestep the threshold issue of subject-matter jurisdiction and proceed to address the merits of arguments that arbitration provisions, or any other contract provisions for that matter, are invalid. If any Court, anywhere can decide the viability of any contract provisions, then all principles of jurisdiction are lost. And parties are stripped of their freedom to

contract as to choice-of-law and forced to litigate in unanticipated and unauthorized forums. This far-reaching proposition has no support in our laws.

Rather, jurisdiction is always the preliminary inquiry. And if we do not possess the requisite jurisdiction in this Commonwealth, we are not invested or entitled to opine as to the disposition of disputes that belong to another jurisdiction's Courts of law, even as regards our own citizens. And we would not approve of another jurisdiction's Courts encroaching into our territory. Kentuckians are free to contract with those from another jurisdiction, and they possess the liberty to agree by written contract to subject themselves to another state's laws to resolve their disputes. Jurisdiction is paramount, and where we do not possess it, as here, we cannot bypass this prerequisite by delving into questions as to whether the contractual terms are valid.

The dispute between Fidelity and the Estate is distinguishable from *Frankfort Med.* on its facts and procedure. Of paramount importance, even the Trial Court itself here conceded that it could not reach the question of whether the arbitration agreement was valid because it lacked subject-matter jurisdiction. The jurisdictional component of the subject agreement has always been the central dispute here. That was not the case in *Frankfort Med.*, where the enforceability of the agreement in any respect and in any forum was at issue.

The Trial Court below lacks jurisdiction not just regarding the arbitration agreement in isolation. It is not a competent Court of jurisdiction and cannot adjudicate any of the merits of the controversy, and we cannot assume jurisdiction to adjudge those merits either. The Trial Court's conclusion that it lacked the jurisdictional authority to enforce arbitration was correct and should have been the end of the matter. Its subsequent decision to deny the motion to arbitrate is clearly erroneous. The Trial Court lacked the authority to deny or grant the motion for arbitration. The required course was to remand the motion and dismiss the case here. After eight years of uncertainty and languishing in an improper forum, the only acceptable result is dismissal so that the parties can finally proceed in a Court of competent jurisdiction elsewhere and achieve resolution of their dispute on the merits. As the majority noted, the Customer Agreement containing the arbitration agreement specifies that "[t]his agreement *and its enforcement* are governed by the laws of the Commonwealth of Massachusetts[.]" R. at 33 (emphasis added).

Accordingly, I would reverse and remand the Trial Court's Order, with instructions to dismiss the case and inform the parties that they should seek redress in the proper forum, the Commonwealth of Massachusetts.

BRIEFS FOR APPELLANT:      BRIEF FOR APPELLEE:

Alex E. Wallin              Jonah L. Stevens
Cincinnati, Ohio          Pikeville, Kentucky